AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone 7, w/SIM card IMEI/MEID 8952020217,<br>serial number 510759350 | )<br>)<br>)   Case No.<br>)<br>)<br>) |

FILED
SEP 11 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                   DEPUTY

'19MJ•3878

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 545, 371 | Smuggling/Importation Contrary to Law, Conspiracy |
| 16 USC 1538(c)(d) & 1540(b) | Unlawful Importation of Wildlife |
| 16 USC 3372 & 3373 | |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Eduardo Nieves, Special Agent, US Fish & Wildlife
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/11/19

*Judge's signature*

City and state: San Diego, California       Hon. Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

Attachment A

The property to be searched is a Black iPhone 7, with a SIM card indicating the IMEI/MEID is 8952020217, serial number 510759350, currently in the possession of U.S. Fish and Wildlife, 610 Ash Street, Suite 1103, San Diego, California.

ATTACHMENT B

The following evidence to be searched for and seized is limited to evidence of violations of Title 18 U.S.C § 371 (Conspiracy); Title 18, U.S.C. § 545 (Smuggling/Importation Contrary to Law); and Title 16, U.S.C. §§ 1538 (c) and (d) and 1540 (b)(1) and Title 16, U.S.C. §§3372 and 3373 (Unlawful Trafficking in Wildlife), for the period from May 1, 2019, to present:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import, export, purchase, sell, transport and/or ship Totoaba, and/or other fish and wildlife protected by the Convention on International Trade in Endangered Species (CITES), including related financial information;

    b. images of Totoaba and/or other fish and wildlife protected by the Convention on International Trade in Endangered Species;

    c. tending to indicate knowledge of the legal requirements for the purchase, sale, transport, shipment, import and export of Totoaba and/or other fish and wildlife protected by the Convention on International Trade in Endangered Species;

    d. tending to identify other facilities, storage devices, or servicesBsuch as email addresses, IP addresses, phone numbersBthat may contain electronic evidence tending to indicate efforts to illegally traffic in Totoaba and/or other fish and wildlife protected by the Convention on International Trade in Endangered Species;

    e. tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking in Totoaba and/or other fish and wildlife protected by the Convention on International Trade in Endangered Species;

    f. tending to identify travel to or presence at locations where Totoaba swim bladders were purchased, sold, transported and/or delivered;

    g. tending to identify the user of, or persons with control over or access to, the subject phone; or

    h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Eduardo R. Nieves, being duly sworn, depose, and state:

## INTRODUCTION

1. I am a Special Agent ("SA") of the United States Department of the Interior, Fish and Wildlife Service ("FWS") assigned to the San Diego, California, field office. I have been employed by the FWS as a Special Agent since July 2011. During my employment with the FWS, I have conducted and participated in numerous investigations pertaining to violations of federal and state wildlife laws. Prior to being employed as a Special Agent, I held the position of a Wildlife Inspector for FWS from December 2004 to July 2011. I also served as an Investigator for the Guam Attorney General's Office (from June 1997 to November 2004), and Conservation Officer (Game Warden) for the Government of Guam's Agriculture Department (from July 1991 to June 1997).

2. As a Special Agent for the FWS, I attended the FWS Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. The training I received included instruction on the requirements and implementation of the Convention on the International Trade in Endangered Species of Fauna and Flora ("CITES"), including the requirements for importing and exporting species of wildlife covered by CITES. Training also included instruction for the requirements and implementation of the Endangered Species Act, including the requirements for importing and exporting species of wildlife listed as endangered.

3. This affidavit is intended to support an application by the United States of America for a search warrant for a cellular telephone found in the possession of Haoyu HUANG (hereinafter "the subject phone") as he intended to leave the United States into Mexico. I seek authority to search the subject phone, more fully described in Attachment A, for items, more fully described in Attachment B, which constitute evidence of violations of federal criminal law by Yikang LIANG, Haoyu HUANG and others, relating to illegal trafficking in totoaba swim bladders. Those violations include smuggling and importation contrary to law, in violation of Title 18, United States Code, Section 545; violations of Title 16, United States Code, Sections 1538 (c) and (d) and 1540(b), which prohibit knowingly engaging in trade or possessing specimens traded in violations of the provisions of CITES and knowingly possessing and transporting endangered species imported without a permit from the FWS (the Endangered Species Act); and violations of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B), which prohibit the transportation, sale, receipt or acquisition in interstate or foreign commerce of fish or wildlife taken in violation of foreign law, which involves the sale, purchase or intent to sell or purchase fish and wildlife with a market value of over $350. If the defendant knows the wildlife was taken illegally, the conduct is a felony; if the defendant, in the exercise of due care, should have known that the wildlife was taken in violation of foreign law, the conduct is a misdemeanor. In addition, there may be evidence of a violation of Title 18, United States Code, Section 371, which prohibits conspiracy to commit offenses against the laws of the United States.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers in the United States and Mexico, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## BACKGROUND

5. Totoaba macdonaldi are marine fish, found only in the Sea of Cortez in Mexico. Since 1976, Totoaba have been protected under CITES Appendix I, and have been protected under the Endangered Species Act (50 CFR §17.11) since 1979. In order to lawfully import Totoaba or any other endangered species, a permit from the FWS is required, pursuant to 50 CFR §17.21-§17.23. A declaration must be filed with the FWS upon importation of any species listed as endangered, pursuant to 16 U.S.C. §1538(d) and 50 C.F.R. §14.61. A person who knowingly possesses, sells, delivers, carries, transports or ships an endangered species imported without a permit has violated the Endangered Species Act, 16 U.S.C. §1538(a)(1)(D), and §1540(b)(1).

6. On May 23, 2019, I contacted Tamesh Woulard, Supervisory Wildlife Inspector, who reviewed the FWS records related to permits issued by the FWS for the importation and exportation of endangered species. Woulard informed me that the FWS records of the Service Permit Issuing Tracking System (SPITS) show only two permits for

3

the importation of Totoaba. One was issued to the CITES Management Authority of Hong Kong in 2013, for the importation of specimens to be identified by the FWS laboratory for law enforcement purposes, which were declared upon entry on December 10, 2013. The other permit, which is unsigned, appears to be issued in 2000, to permit the importation of 50 live specimens for captive breeding. No declaration of the importation relating to this permit exists. These two instances were the only records related to permits and declarations for the importation of Totoaba.

7. Based on my experience and training, and conversations with other law enforcement agents, both in the United States and abroad, as well as persons involved in conservation efforts regarding Totoaba, I know that Totoaba swim bladders are highly prized in Asia for their supposed medicinal value. Totoaba swim bladders can sell for $20,000-$80,000 kg, rivaling the price of gold and cocaine. Information received on May 17, 2019, from a non-government organization operating in the Sea of Cortez indicates that trade in Totoaba has been infiltrated by members of the Sinaloa cartel.

8. Since 1975, it has been unlawful under Mexican law to fish for Totoaba. The fishing season for Totoaba has been closed indefinitely since August 2, 1975, and remains closed today. The General Law on Sustainable Fishing and Aquaculture ("the General Law") establishes the regulatory scheme for fishing within the jurisdiction of Mexico. Pursuant to Articles 40 and 41 of the General Law, a license and/or a permit is required for commercial fishing in Mexico. Pursuant to Article 132 of the General Law, it is a violation of law to harvest, possess, transport, or sell a species out of season, or of less than the

minimum established size and weight, or to harvest a species in excess of permit limits or without a proper license or permit. In addition, Sections 420(iv) of the Federal Penal Code of Mexico, and Sections 56, 65 and 121(x) of the General Wildlife Law of Mexico provide criminal penalties for the illegal taking of endangered species. Mexico is also a signatory to the CITES treaty, which protects Totoaba under Appendix I.

9. The illegal trade in Totoaba has received wide international public attention in the past two years, due to its effect on the endangered vaquita. The vaquita is a porpoise that inhabits the same range as the Totoaba, and is often an unintended by-catch in the nets which are used by illegal Totoaba fishermen. It is believed that there are now less than 30 vaquita alive today. There is a tremendous international effort underway to protect the remaining vaquita in the Sea of Cortez, which has included such diverse groups as the Mexican Navy, the U.S. National Oceanic and Atmospheric Administration (NOAA) and non-profit organization Sea Shepherd. The government of China has recently publicized their prosecutions of Totoaba smugglers in an effort to deter the activity there.

## STATEMENT OF PROBABLE CAUSE

Traffic Stop

10. On May 14, 2019, at approximately 11:48 a.m., Orange County Deputy Sheriff R. Franco and his canine Bolt conducted a traffic stop on a maroon Toyota van with Mexico license plate number A67-NRM-6, driven by Yikang LIANG, traveling southbound on Interstate 5 with passenger Haoyu HUANG, for exceeding the posted speed limit, south of the Las Pulgas exit. Upon requesting LIANG's driver's license, Franco

noticed that LIANG's hands were shaking considerably. Franco noted that the passenger immediately wanted to respond to all questions he posed to the driver, which in his experience was suspicious behavior. Franco observed three very large boxes in the cargo area of the van, which was inconsistent with someone shopping for clothes, as stated by the two individuals in the vehicle. Despite telling Franco that they had resided in Mexico for 9 and 14 years, respectively, and crossing frequently into the United States, neither LIANG nor HUANG could respond to basic questions asked in Spanish or English. Franco contacted the Border Patrol and was advised that two days earlier, on May 12, 2019, both LIANG and HUANG had driven separate vehicles into the United States from Mexico, entering 17 minutes apart. Franco identified the method of entering the United States in separate vehicles and returning to Mexico in one vehicle as a method frequently used to move narcotics or currency. For officer safety, Franco requested back up from another Deputy Sheriff.

Canine Alert and Search

11. At 12:27 pm, a second Deputy Sheriff arrived on scene to assist. Canine Bolt conducted a sniff of the Toyota and alerted on the Toyota. Both Deputy Sheriffs conducted a search of the Toyota. Within the three large boxes in the rear of the vehicle, they observed clothing layered at the top and bottom of each box. Between the layers of clothing, they found multiple bundles of tanned hardened material wrapped in plastic wrap, suspected to be dried swim bladders of the Totoaba macdonaldi fish.

12. At 1:00 pm, I received a telephone call from a U.S. Border Patrol Supervisor Pedro Carrillo from the San Clemente Station. I received a photo of an item wrapped in plastic wrap, which I identified as the swim bladder of the endangered Totoaba macdonaldi by its distinctive tendrils. I contacted Deputy Sheriff Franco, who explained the incident and the discovery of 44 bundles of Totoaba swim bladders concealed within the 3 large boxes.

Seizure of Totoaba swim bladders

13. I responded to the San Clemente Border Patrol Station, where I met with the Deputy Sheriff Franco and Homeland Security Investigations Special Agent Johnson Pham. I viewed 44 bundles of Totoaba swim bladders stacked upon a large table and identified that each bundle contained several pieces of Totoaba swim bladders within the plastic wrap. I was informed that the three boxes in the vehicle contained 132 Totoaba swim bladders, weighing approximately 104 pounds. The bladders are therefore valued at $940,000 to $3,760,000.

Subject Interviews and Consent Searches of Phones

14. Homeland Security Investigations Special Agent Johnson Pham and I interviewed LIANG, with the assistance of a Mandarin interpreter. LIANG was advised of his Constitutional rights, which he waived (in Mandarin), and agreed to speak with the special agents. LIANG told the special agents that he drove the Toyota van into the United States on Sunday, May 12, 2019, and went to Los Angeles. LIANG stated that he is a cook at a Chinese restaurant located in Tijuana, Mexico. When questioned about the three large

7

boxes within the Toyota van he was driving, LIANG said he did not know where the three large boxes came from, nor how they came to be within the Toyota van. LIANG was shown one of the bundles of the Totoaba swim bladders by the special agents. LIANG claimed to not know what it was.

15. At the time of his detention, LIANG was in possession of a Gold with White face iPhone, with a SIM card indicating the IMEI/MEID is 8952020218, and serial number is 610394130. A second SIM card was taped to the back of iPhone with logo "4G" and the number 19160 00008 00202 07222. Special Agents requested permission to review LIANG's cellular telephone. LIANG consented and unlocked the device. The special agents identified a video on the phone depicting both LIANG and HUANG engaged in fishing with nets of a type similar to those used to fish for totoaba. On May 14, 2019, I took custody of the phone and seized the Totoaba swim bladders.

16. Special Agent Pham and I also interviewed Haoyu HUANG, the same day, with the assistance of a Mandarin interpreter. HUANG was advised of his Constitutional rights, which he waived (in Mandarin), and agreed to speak with the agents. HUANG said that he worked as a cook at a Chinese restaurant in Tijuana, Mexico. HUANG acknowledged that he was the owner of the Toyota van driven containing the Totoaba, but claimed he was only transporting the boxes for his friend "Ming Si," to whom he was going to deliver the boxes. HUANG said that Ming Si asked him to pick up the boxes 4-5 days earlier, which Si told him would contain cloth that Si intended to sell in Mexico. HUANG said he picked up the boxes from an unknown individual who had his license plate number

around 9:00 or 10:00 am that morning at a plaza or big supermarket. HUANG said that when he was given three boxes, he did not get out of the car and the boxes were placed in the van. HUANG said he is friends with LIANG and that they are both cooks in restaurants. HUANG said he was not going to be paid for transporting the boxes. HUANG said the officer showed what was discovered within the boxes but claimed he did not know what it was. HUANG stated they were in route to drive the boxes directly to Mexico.

17.  At the time of his detention, HUANG was in possession of the subject phone, a Black iPhone 7, with a SIM card indicating the IMEI/MEID is 8952020217, and serial number is 510759350. Agents requested permission to review HUANG's cellular telephone. HUANG consented and unlocked the device. Agents identified several photos of wildlife often smuggled in the wildlife illegal trade, including sea horses and soft shelled turtles, which are protected under CITES. This phone was also seized.

Entry of Subjects and Vehicle Two Days Earlier

18.  Deputy Sheriff Franco advised me that the Toyota van containing the Totoaba was registered to the passenger in the vehicle, Haoyu HUANG. Franco advised me that Border Patrol records showed that on Sunday May 12, 2019, Yikang LIANG entered the United States from Tijuana, Mexico driving HUANG's Toyota van, while Haoyu HUANG entered the United States within 17 minutes of LIANG's entry, driving a 2017 Lexus. That same Lexus returned to Tijuana, Mexico with two unidentified individuals on May 14, 2019, at approximately 1:48 pm, two hours after the traffic stop, which is approximately

9

the time it would take to arrive at the border from the spot of the traffic stop if the vehicles were driving in tandem.

19. Based on my experience and training, and conversations with others involved in enforcement of laws pertaining to fish and wildlife, I know that people involved in illegal trafficking in fish and wildlife, frequently send photographs of the fish and wildlife to others, to demonstrate the species, size and quality of the product. Persons trafficking in fish and wildlife, are also known to send photographs, text messages and emails to others regarding shipments of products, prices, transportation and delivery arrangements, as well as records of financial transactions involving the wildlife products. Such persons also are known to conduct internet research and save documents regarding the legal requirements for the purchase sale, transport, shipment, import and export of wildlife products. Although a cursory search was performed on the phones, I am seeking a warrant in order to perform a more complete and systematic search for additional evidence.

Cellular Telephone

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow their

10

subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time, labor intensive, and may take weeks or longer.

21. Following the issuance of this warrant, review and analysis of the subject cellular telephone will resume. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data for a cellular telephone subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety

11

(90) days, absent further application to this court, and the cellular phone will be returned to its owner.

Prior Search Warrant

23. On June 4, 2019, U.S. Magistrate Judge William Gallo issued a warrant (19mj2327) to search the subject phone for the same records and data requested herein. That same day, I requested digital forensic support from the FWS Digital Evidence Recovery and Technical Support Unit (DERTSU), located in Jacksonville, Florida. The phones were received by the DERTSU office in SeaTac, Washington, on July 12, 2019, where I was directed to send them. The matter was assigned to Senior Special Agent Jesica Espinoza. Espinoza was unable to extract the data from the phones because they were both password protected.

24. Locked iPhones need advanced forensic software to discover the password. On June 13, 2019, Special Agent Espinoza contacted the New Mexico Regional Computer Forensics Laboratory (NMRCFL), which has the advanced forensic software necessary for that task. Special Agent Espinoza was advised to send the phones to the NMRCFL on June 28, 2019, which she did that day.

25. On August 9, 2019, Special Agent Espinoza was informed by the NMRCFL that the iPhone 7 of Mr. HUANG had been unlocked and the data had been extracted and would be available shortly for a search for records responsive to the warrant, after the work product of the NMRCFL was finished with its final peer review process. The iPhone 8 of Mr. LIANG had not yet been unlocked. Additional time is needed to work with the iPhone

12

8 to unlock the password and obtain the data. Special Agent Espinoza advised that NMRCFL was waiting for a new software release that would allow it to unlock the iPhone 8.

26. On September 4, 2019, Special Agent Espinoza was informed that the extracted data from the HUANG phone would be mailed to her that day for her review.

27. On August 7, 2019, I left for a training assignment in Bangkok, Thailand. I returned from that assignment on August 24, 2019.

28. On August 30, 2019, I was activated assist with the potential relief efforts related to Hurricane Dorian, and thereafter traveled to Florida, and later to North Carolina. I returned from that assignment on September 7, 2019. Because of these special assignments, I was unable to secure an extension of the original warrant for the search of the subject phone, issued by Magistrate Judge Gallo. The time for examination under that warrant expired on September 4, 2019. While I was away, I informed Special Agent Espinoza that the warrant had expired. No examination of the data from the phones has occurred since September 4, 2019.

//

//

//

//

//

//

13

## CONCLUSION

29. Based on the foregoing, there is probable cause to believe the items identified in Attachment B constitute evidence of violations of Title 18, United States Code, §§ 371, 545 and Title 16, United States Code, §§1538, 1540, 3372 and 3373, and will be found on the cellular telephone to be searched as described in Attachment A.

_____
Eduardo Nieves
Special Agent, USFWS OLE

Subscribed and sworn to before me this 11 day of September, 2019

_____
HONORABLE JILL L. BURKHARDT
UNITED STATES MAGISTRATE JUDGE